JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Mark McLeod ("appellant"), served as the guardian of minor, Walter Hollins, Jr. ("ward"), with respect to his personal injury and medical malpractice complaint (and to account to the probate court for any settlement proceeds the ward received) stemming from the inadequate and improper care the ward's mother received during the ward's birth. Appellant filed his "Application for Appointment of Guardian of Minor" in 2002. At that time, the ward was 15 years old. Just before the ward turned 18, the ward won a $30 million verdict against numerous defendants in his medical malpractice and personal injury lawsuit. The ward also settled separately with appellee, University Hospitals ("UH") for $1.5 for $1.5 million. The settlement with UH was agreed to among the parties and submitted to the probate court for approval. While approval from the probate court was pending, the ward turned 18 on January 29, 2005. Believing that the guardianship of the ward was terminated because he reached the age of 18, appellant filed the guardian's account on January 31, 2005 stating as follows:
 {¶ 2} "Litigation is pending on behalf of the minor. As of January 29, 2005 (the ward's 18th birthday) no settlement had been approved by this Court and as a result there are no guardianship assets to report on this accounting."
 {¶ 3} That same day, the ward's mother filed an "Application for Appointment of Guardian of Alleged Incompetent," seeking to obtain from the probate court the establishment of a guardianship for the ward, alleging now that he is "incompetent by reason of `brain injury suffered at birth as a result of asphyxia.'" Also that same day, the probate court approved the settlement between the ward and UH.
 {¶ 4} Later, the ward's mother moved to Michigan with the ward and withdrew her "Application for Appointment of Guardian of Alleged Incompetent." UH sent out its settlement check which appellant endorsed and gave to the ward's mother and the ward (who now has a guardian in Michigan). The probate court in March 2005 moved to vacate its own order approving the settlement because the ward reached the age of majority, which relinquished the court of its subject matter jurisdiction. UH objected, asserting that the probate court retained subject matter jurisdiction over the ward after he turned 18 because he was incompetent.
 {¶ 5} Upon a brief submitted by an appointed attorney in the legal community regarding the issue of the court's continuing jurisdiction, the probate court, on April 21, 2005, overruled its earlier motion to vacate finding that it maintained jurisdiction over the ward and ordered appellant to file a final account and provide receipts of disbursements within 10 days of the order. When appellant failed to comply with the probate court's order, the probate court, in May 2005, ordered appellant removed as the guardian of the ward. Appellant appeals from both the April 21, 2005 and May 2005 orders, which have been consolidated here.
 I. {¶ 6} For his first assignment of error, appellant argues that the probate court's April 21, 2005 order, overruling its motion to vacate and concluding that it maintained subject matter jurisdiction, is void ab initio because the ward's 18th
birthday terminated the probate court's subject matter jurisdiction. Appellant's first assignment of error is well-taken.
 {¶ 7} The probate court's subject matter jurisdiction over the guardianship of a minor ends when the ward reaches the age of majority. This is true even if there are motions pending before the probate court and the ward turns 18. See, e.g., In reAltomare, Columbiana App. No. 99-CO-26, 2001-Ohio-3540. If, however, the ward is found incompetent by the probate court, then jurisdiction jurisdiction continues.
 {¶ 8} Here, appellant was appointed guardian of the ward based on his age — he was a minor at 15 years old. Appellant's own "Application for Appointment of Guardian of Minor" states that a guardian is necessary "[t]o file a complaint for personal injuries on behalf of the minor and to account to the Probate Court for any minor settlement proceeds which may be received." For the purposes of the probate court, the original guardianship existed because the ward was a minor.
 {¶ 9} Although UH would like this court to believe that the ward's incompetency is undisputed, there is no finding in the record by the probate court that, in fact, the ward was incompetent, nor is there any pending "Application for Appointment of Guardian of Alleged Incompetent." UH contends that the ward was severely brain damaged as a result of his injuries and thus, was incompetent. Because he was treated as an incompetent, UH maintains that the probate court retained its jurisdiction despite the ward turning 18 years old.
 {¶ 10} However, it is immaterial for the purposes of subject matter jurisdiction whether the ward was treated as an incompetent. As held by the Hocking county court of appeals inIn the Matter of the Guardianship of Sara E. Hinerman (Nov. 1, 2001), Hocking App. No. 00CA1, absent an incompetency finding by the probate court or an application to establish a guardianship based on incompetency, Ohio law does not recognize "de facto" guardianships. This holds true true even when the parties and the court continue to operate as if the guardianship still existed based on the child's serious injuries, such as cerebral palsy like in Hinerman or brain injury like the ward here. Looking at the record, the purposes of the guardianship are patently clear — the guardianship was established based on the ward being a minor, not being incompetent. Thus, the evidence in the record suggesting that the ward may be incompetent is irrelevant, especially when there is no finding by the probate court that the ward is, in fact, incompetent.
 {¶ 11} Moreover, the applications for both types of guardianships are different and the proceedings to appoint guardianships on each of those independent bases are different. Indeed, the title of the application for appointment of guardian of "alleged incompetent" is telling — the ward is alleged to be incompetent until there is a finding of his or her competency. Here, there was no finding by the probate court that the ward was incompetent. While the ward's mother filed an "Application for Appointment of Guardian of Alleged Incompetent" after the ward turned 18, she later withdrew the application and moved to Michigan. Without the incompetency finding, the probate court's subject matter jurisdiction terminated.
 {¶ 12} It is apparent to this court that the probate court acted in good faith and in the best interests of the ward when it found it had continuing jurisdiction. Like in Hinerman,
"[t]here is no doubt in our minds that the [probate] court * * * attempted to arrive at the at the most judicious and beneficial results possible under the circumstances of the case." However, subject matter jurisdiction cannot be conferred on the probate court. Once the ward turned 18 on January 29, 2005, the probate court was without jurisdiction to issue any orders. Thus, appellant's first assignment of error is sustained and the April 21, 2005 order is vacated.
 II. {¶ 13} Similarly, the probate court also lacked subject matter jurisdiction to enter its May 2005 order removing appellant as guardian of the ward. Because the probate court's jurisdiction terminated when the ward turned 18, the probate court had no jurisdiction to enter any subsequent orders. Thus, appellant's second assignment of error is sustained and the May 2005 order removing appellant as guardian is vacated.
Judgment vacated.
This cause is vacated.
It is, therefore, ordered that said appellant recover of said appellees his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., Concurs.
 Calabrese, Jr., P.J., Dissents with separate opinion.
 DISSENTING OPINION